UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **In Re:** | ) | **Case No.** 06-40457-399 |
| | ) | |
| SKAGGS, RICHARD & CONNIE, | ) | Chapter 7 |
| | ) | |
| | ) | Judge Barry S. Schermer |
| | ) | |
| Debtors. | ) | **Re: mtn 33** |
| | ) | |

## ORDER

**IN THIS DISTRICT,** at St. Louis.

Plaintiff United States Trustee's ("Movant's") Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(2) was called and heard on July 17, 2006. Prior to the hearing, Movant filed a brief and Debtors' Counsel filed an amended reply and brief. Having received testimonial and documentary evidence as well as having reviewed the record as a whole, the Court finds that the Movant proved by a preponderance of the evidence that a presumption of abuse exists under 11 U.S.C. § 707(b)(2) in this case as discussed below.

## FINDINGS OF FACT

1. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b)(1) and 11 U.S.C. § 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B), having been filed under 11 U.S.C. § 707(b)(2).

2. Debtors filed their Petition, Schedules, Statement of Financial Affairs, Statement of Current Monthly Income and Means Test Calculation ("B22A Form") and other related bankruptcy documents on February 7, 2006. Subsequent to the first setting of their 11 U.S.C. § 341 creditors' meeting, Debtors filed first amended Schedules D, F, J, Statement of Intention and

B22A Form on March 17, 2006.

3.   Amended Schedules D and F and Schedule E reflect the total unsecured debt to be primarily consumer debt of $40,725.59 which amount is not disputed by the parties.

4.   On the amended Statement of Intention, the Debtors reiterated their previous intention to surrender their mobile home and their second vehicle, a 2001 Ford Taurus, to their respective secured lenders.  However, the Debtors added that they intended to avoid the secured lender's lien on their three televisions, a computer and a rifle as exempted property.  The amended Statement of Intention also states that the Debtors would reaffirm on their 2004 Dodge Stratus as well as retain a washer and dryer set by continuing to make regular payments to the secured creditor.

5.   Debtor Richard Skaggs testified that Debtors had ceased making payments to the mobile home's secured creditor and had moved from the mobile home into an apartment before filing bankruptcy.  On March 23, 2006, this Court granted, on the default by the Debtors to respond, the secured creditor's motion for lift stay on the mobile home.

6.   Debtor Richard Skaggs further testified that the Debtors had ceased using and making payments on their 2001 Ford Taurus prior to the filing of this bankruptcy case, anticipating the secured creditor would repossess the vehicle.

7.   Debtors' amended Schedule J sets out for monthly telecommunications costs, excluding telephone costs, $54.00 for cell phone and $102.00 for Internet.  Uncontradicted testimony from Movant's witness, Cynthia Moore, Bankruptcy Analyst with the Office of United States Trustee, indicated that billing provided to her by the Debtors post-filing revealed current monthly billing for their Internet service as $16.99 and average cell phone service as $53.01.

8. Debtors' amended Schedule D sets out that three televisions, a computer and a rifle are subject to a non-purchase money security interest with an outstanding claim of $1,390.00. Their amended Schedule J sets out a monthly expense of $139.00 to the lender, World Finance Corp. Debtors' amended Statement of Intention declares that the property subject to this lien is claimed exempt and the lien will be avoided.

## CONCLUSIONS OF LAW

9. Debtors' undisputed annualized current monthly income as set out on the amended Form B22A Form, line 13, is $55,570.00. The applicable median family income for a family of two is $44,631.00. Since the median family income is less that the Debtors' annualized current monthly income, Debtors completed the remaining Parts IV, V and VI of the amended B22A Form as required.

10. On line 20B, "Housing and Utilities; mortgage/rent expense", the parties agree that the Debtors set out the correct IRS Housing and Utilities Standards' net amount of $418.00 based on Debtors' applicable locale of their apartment residence. It should be noted, however, that Debtors did not subtract from the $418.00 on line 20Bb the average monthly payment of $236.70 as set out on Line 42 for their mobile home.

11. Debtors, having moved into an apartment at a monthly rent of $600.00 prior to case filing, claim an additional $182.00 above the $418.00 housing allowance set out on line 20Bc. The Debtors followed the second phrase of this line's instructions to "...enter any additional amount to which you contend you are entitled, ..." Movant's witness testified that this additional rental expense on line 21 should be reduced to zero because Debtors have already claimed on line 20B the maximum allowable amount under the IRS Housing and Utilities Standards. The Court

3

concurs with this argument and notes that the first phrase of the instructions on completing line 21 states unambiguously that only if the Debtors "...contend that the process set out in Lines 20A and 20B does not accurately compute the <u>allowance</u> to which you are entitled under the IRS Housing and Utilities Standards,..." (Emphasis added). Neither party has argued that Lines 20A and 20B together do not set out the maximum allowance under the IRS Housing and Utilities Standards which are considered a single expense by the IRS as set out in the IRS Manual, § 5.15.1.9.1. Further, the evidence adduced at the hearing by the Movant indicated that there were available in the Debtors' city of residence, Farmington, Missouri two person apartments for a monthly rental under the $418.00 Local IRS Standard. The Court also notes that the Debtors did not claim an additional expense for their housing under line 56. The Court finds that the IRS Local Standard of $418.00 is reasonable under the IRS Collection Financial Standards, IRS Manual 5.15.1.7, however, the expense on line 21 is reduced to zero.

12. Debtors on Line 22 claim a $345.00 vehicle operation expense for two or more vehicles and on Line 24 a $160.90 ownership expense for a second vehicle. Movant's witness testified that, as it has been the intention of the Debtors to surrender the 2001 Ford Taurus as set out on their Statements of Intention, they are entitled to only one vehicle operation expense of $251.00 on line 22 and no ownership expense for a second vehicle on line 24. The Court notes that the Debtors' original and amended Statements of Intention set out that the 2001 Ford Taurus will be surrendered and that the testimony by Debtor Richard Skaggs revealed that their decision to surrender was made prior to filing by ceasing payments to the secured lender and use of the vehicle. Debtors' counsel argues that 11 U.S.C. § 707(b)(2)(A)(ii)(I) allows Debtors to take those expenses in effect on the date of the order of relief regardless of debtors' intent to

4

surrender, citing In re Walker, 05-15010-whd (Bankr. N.D. Ga. 2006).  Movant argues that the same statute states that the "debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National and Local Standards." (Emphasis added).  The Court finds that the intention of the Debtors to surrender the 2001 Ford Taurus coupled with their decision not to use the vehicle preceded the filing of this bankruptcy case has remained constant thereafter. Further, it is instructive that the IRS Internal Revenue Manual at the Financial Analysis Handbook, § 5.15.1.7 (4.B) states that"[i]f a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense."  Additionally, § 5.8.5.5.2 of the same Manual provides that the ownership expense is allowed only for the "purchase and/or lease of a vehicle".  Lastly, the IRS Collection Financial Standards expressly state that "[t]he ownership costs provide maximum allowances for the lease or purchase of up to two automobiles if allowed as a necessary expense." Collection Financial Standards, www.irs.gov/individuals/ariticles/)..id=96543,00.html. Congress, in utilizing IRS standards in providing expenses for vehicle operating and ownership expenses, intended that debtors continue to have future responsibility for owning and operating the vehicles for which they can claim expenses on the B22A Form.  Accordingly, the operating expense of $345.00 on line 22 is reduced to $251.00 and the ownership expense for a second vehicle of $160.90 on line 24 is denied.

13.    Movant's addition of a $0.56 monthly mandatory payroll deduction on line 26 is not disputed by the Debtors and is allowed.

14.    Debtors' claim on line 31, Future Payments on Secured Claims, 60-month average secured payment expenses of $236.70 on the mobile home and $177.10 on the 2001 Ford Taurus.  Also

5

on Line 42 Debtors claim a $16.22 expense for the 60-month average secured payment expense on three televisions, computer and a rifle. Debtors also include on line 43 monthly default cure amounts of $4.04 on the mobile home and $4.22 on the 2001 Ford Taurus. Movant's witness testified that these expenses should be denied because the Debtors, in stating on both of their Statements of Intention their intent to surrender the mobile home and the vehicle and to avoid the lien on the personal property, would not have monthly payments to pay on these properties. Mr. Richard Skaggs's testimony as to the unswerving intent of the Debtors to surrender the properties prior to and after the filing of this bankruptcy case is persuasive as to whether or not the Debtors will have to pay these expenses in the future. Further, it is relevant that the Debtors did not defend the lift stay motion filed by the mobile home creditor. Nor did Debtor Richard Skaggs testify at the hearing that the Debtors would not avoid the lien on the personal property as exempted property. Debtors argue that 11 U.S.C. § 707 (b)(2)(A(iii) permits these expenses due to the statutory language allowing secured expense calculation for line 42 to be determined as

" (I) the total of all amounts scheduled as contractually due to secured creditors in each month following the date of the Petition..." regardless of the stated intention to surrender or avoid the lien on affected properties. Debtors are, in fact, proposing that this provision authorizes them to reduce their current monthly income ("CMI") on their Form B22A by amounts that would have been due, but never paid, to secured creditors on account of Debtors intent to surrender the properties or have the secured claim on them set aside by exemption. The Debtors' interpretation, however, conflicts with the aforesaid statute and the BAPCPA . Nor does Debtors' interpretation meet the requirements of § 707(b)(2)(A)(ii)(I) which states that a

6

debtor's "monthly expenses shall be debtor's <u>applicable</u> monthly expense amounts under the ...Local Standards,,,, issued by the Internal Revenue Service..." (Emphasis added).

15. To determine the amount which may be deducted from CMI under this provision, "we must begin with the language of the statute itself." <u>In re T. H. Orlando, Ltd.</u>, 391 F.3d 1287,1291 (11 Cir. 1004). In determining the plain meaning of a statute, "the Court must give meaning and import to every word in a statute." <u>In re Jass</u>, 411, 415 (Bankr. Utah 2006)(citing <u>Negonsott v. Samuels</u>, 507 U.S. 99. 206 (1993)). However, as the United States Supreme Court has stressed, "statutory construction is a holistic endeavor." <u>Koons Buick Pontiac GMA, Inc. v. Nigh</u>, 543 U.S. 50, 60 (2004)(quoting <u>United Sav. Assn. Of Texas V. Timber Inwood Forrest Associates, LTD</u>, 484 U.S. 365, 371 (1988). Therefore, "[i]n interpreting one part of a stature, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." <u>Philbrook v. Glodgett</u>, 421 U.S. 707, 713 (1975).

16. In the <u>In re Walker</u> decision cited by the Debtors, the bankruptcy court in that case ruled that the plain meaning of the phrase "scheduled as contractually due" permitted debtors to reduce their CMI for payments owed pursuant to the underlying contract, regardless of whether the debtor had indicated and intended to surrender the property. See <u>In re Walker</u>, 2006 WL 1314125 at 3-4 (Bankr. N.D. Ga.2006). However, that court only reached this result by applying a dictionary definition of the work "scheduled" to conclude that "payments that are 'scheduled as contractually due' are those payments that the debtor will be required to make on certain dates in the future on the contract. <u>Id</u>. at 3.

17. As an initial matter, Congress used the phrase "scheduled as" several times in the Bankruptcy Code to refer not to the common dictionary meaning for the word schedule (i.e., "to

7

plan for a certain date"), but to whether a debt is identified on a debtor's bankruptcy schedules. See 11 U.S.C. § 1111(a) wherein a claim or interest is not deemed filed if it is scheduled as disputed, contingent, or unliquidated. When Congress amends a law, as it did with BAPCPA, the prior statute's

> "...longstanding meaning forms the background against which Congress legislates... The courts presume that Congress will use clear language if it intends to alter an established understanding about what a law means; if Congress fails to do so, courts presume that the new statute has the same effect as the older version."

Firstar Bank, N.A. v. Faul, 253 F.3d 982, 988 (7th Cir. 2001)(citing Cottage Svgs. Ass'n v.Commissioner, 499 U.S. 554, 562 (1991)). Nothing in 11 U.S.C. § 707(b)(2)(A)(iii) indicates an intent to assign a different meaning to the phrase "scheduled as" in this provision and to do so would run contrary to the statute.

18.    Accordingly, the Debtors' schedules and statements form the basis from which the Court should determine whether a debt is "scheduled as contractually due." 11 U.S.C. § 521, in conjunction with Federal Rule of Bankruptcy Procedure 1007(b), requires debtors to file, inter alia, schedules and a statement of intent as prescribed on the appropriate official forms. Further debtors have a duty to amend their schedules and statements "to keep the information in them current." In re Turner, 2005 WL 357895 at 6 (Bankr. D. N.M. 2006); In re Searles, 317 B.R. 368, 378 (9th Cir. B.A.P. 2004); In re Okan's Foods, Inc., 217 B.R. 739, 752 (Bankr. E.D. Pa. 1998).

19.    To focus on the single term "contractually due" without due consideration of the import of the term "scheduled" and the phrase "in each of the 60 months following the date of the petition" will miss the actual meaning and the intent of § 707(b)(2). A primary intent of Congress in the

8

passage of BAPCPA was to ensure that those debtors who can pay their debts do so. In <u>In re Hardacre</u>, 338 B.R. 718, 725 (Bankr. N.D. Tex. 2006), the court underlined this Congressional purpose as set out in 151 Cong. Rec. 2459 at 2469-70 (March 10, 2005).

21. The Court further finds that the Debtors are attempting to impermissibly "double dip" on their housing expenses. On lines 20B and 21 of the B22A Form Debtors claim their full monthly rental cost and on line 42b $236.70 as the future monthly secured payment on the mobile home. As noted by the <u>Hardacre</u> Court, at 726, the IRS Collection Financial Standards and Financial Analysis Handbook makes clear that, for housing and transportation expenses, a debtor is allowed <u>either</u> the amount set out in the IRS Local Standards or the amount a debtor actually spends. Here, the Debtors chose prior to commencement of this case to move to their present apartment and surrender their mobile home.

22. Therefore, the expenses set out on line 42 and 43 on the mobile home and the 2001 Ford Taurus are denied. The expense set out on line 42 on the personal property whose lien Debtors intend to avoid is denied.

23. The line 45 Chapter 13 administrative expense of $26.12 is reduced to $8.83 due to the reduction in secured claim payments on Lines 42 and 43.

24. The above adjustments to Form B22A result in total deductions reportable on line 47 of $3,896.09, resulting in a corrected monthly disposable income on line 50 of $734.71. 11 U.S.C. § 707(b)(2)(A)(i) requires this Court to presume that granting of relief in a Chapter 7 case would be an abuse should monthly disposable income times 60 be equal to or greater than $10,000. The Debtors' monthly total disposable income calculated under 11 U.S.C. § 707(b)(2), multiplied by 60, exceeds $10,000. The Debtors have not presented evidence of special circumstances,

9

pursuant to 11 U.S.C. § 707(b)(2(B), sufficient to rebut the presumption of abuse. Accordingly, it is hereby

ORDERED  that unless the Debtors voluntarily convert this case to a case under Chapter 11 or 13 of the Bankruptcy Code on or before September 5, 2006, the Movant's Motion to Dismiss will be granted and this Chapter 7 case will be dismissed pursuant to 11 U.S.C. § 707(b), based on the presumption of abuse under 11 U.S.C. § 707(b)(2) without further notice or hearing.

DATED:  August 16, 2006

St. Louis, Missouri

Barry S. Schermer
Chief United States Bankruptcy Judge

cc:
Peter Lumaghi
Office of U.S. Trustee
111 S. 10th St., Ste. 6.353
St. Louis, Missouri 63102

Mr. Kenneth A. Seufert, Esq.
Debtors' Counsel
Seufert & Dudley, P.C.
P.O. Box 982
Farmington, Missouri 63640

Richard Dean Skaggs
Connie Vernell Skaggs
4 Woodchase Avenue, Apt. 46
Farmington, MO 63640

Mr. Stuart J. Radloff, Esq.
Chapter 7 Panel Trustee
121 Hunter Ave., Ste. 101
St. Louis, Missouri 63124

10